Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JOSUÉ TORRES SANTIAGO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | TA2026RA00166 | REVISIÓN JUDICIAL Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: 6-38553<br><br>Sobre: Programa de Desvío Denegado |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2026.

El 6 de abril de 2026, el señor Josué Torres Santiago (en adelante, Sr. Torres Santiago o recurrente), por derecho propio, acudió ante este Tribunal de Apelaciones mediante *Recurso de Revisión Judicial* en la que nos solicita la revisión de la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa de Pase Extendido con Monitoreo Electrónico*, con fecha 24 de marzo de 2026.[1] A través de la aludida determinación, la Oficina de Programas de Desvíos del Departamento de Corrección y Rehabilitación (en adelante, DCR) denegó su solicitud, por no cumplir con los requisitos de elegibilidad.

Por los fundamentos que expondremos a continuación, **confirmamos** la determinación recurrida.

---

[1] Toda vez que el peticionario se encuentra recluido en el complejo correccional Institución Ponce-1000, para todos los efectos de auscultar nuestra jurisdicción damos como fecha de presentación el día 30 de marzo de 2026, fecha en que aparece firmada la petición por el peticionario. Véase, *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 323-324 (2009).

**-I-**

Según surge del expediente ante nos, el 20 de mayo de 2019, el Sr. Torres Santiago fue sentenciado a cumplir quince (15) años de cárcel, con reincidencia agravada, por los hechos constitutivos de tentativa de agresión sexual (Art. 130 (c) del Código Penal de 2012) e infracción al Art. 58 de la Ley Núm. 246-2011, conocida como la Ley para la Seguridad, Bienestar y Protección de Menores.

En lo concerniente, debemos mencionar que el 10 de junio de 2025, el Comité de Clasificación y Tratamiento de la Institución Correccional Ponce Adultos 1000 reclasificó la custodia mediana a custodia mínima. Además, se refirió para una evaluación de los programas disponibles.

Consecuentemente, el 26 de febrero de 2026 y notificada el 24 de marzo de 2026, la Oficina de Programas de Desvíos del DCR emitió la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa de Pase Extendido con Monitoreo Electrónico*, en la cual denegó el beneficio debido a que el recurrente cuenta con una determinación de reincidencia agravada.

Inconforme, el 30 de marzo de 2026, el Sr. Torres Santiago presentó el recurso que nos ocupa. Mediante su solicitud de revisión judicial alegó que:

> Erró la Oficina de Programas de desvíos del DCR, al denegar basado en el art. 16 letra (c) del Plan de Reorganización del DCR 2-2011, denegando la participación del recurrente en programa de desvío de forma contraria a derecho y/o arbitrariamente.

El 17 de abril de 2026, emitimos una *Resolución* en la cual le otorgamos un término al DCR para presentar posición. El 20 de mayo de 2026, dicha parte sometió *Escrito en Cumplimiento de Resolución* por lo que contamos con el beneficio de la comparecencia de ambas partes. Al ser así, damos por sometido el asunto y procedemos a resolver, no sin antes exponer la normativa vigente aplicable.

**-II-**

*A.*

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[2]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

---

[2] 3 LPRA Sec. 9675.

[A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua." (énfasis en el original).

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999) (citando a *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. JP*, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la

deferencia hacia los procedimientos administrativos cede. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012) (citando a *Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007).

*B.*

El Artículo VI, Sección 19, de la Constitución del Estado Libre Asociado de Puerto Rico, establece como política pública el deber del Estado de reglamentar las instituciones penales, para que estas sirvan a sus propósitos y conduzcan a la rehabilitación moral y social de las personas confinadas en ellas.[3] En virtud de lo cual, se adoptó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA, Ap. XVIII *et seq.*, (Plan de Reorganización) para establecer procesos de rehabilitación moral y social del miembro de la población correccional, a fin de fomentar su reincorporación a la sociedad.

Como parte de sus funciones, se facultó al DCR para estructurar criterios que rijan los programas de desvíos. Así pues, el Secretario del DCR establecerá mediante reglamento los objetivos de cada programa de desvío, cómo estos habrán de operar, los criterios y condiciones para la concesión de tal privilegio, así como los criterios, las condiciones y el proceso que habrá de seguirse para la revocación del privilegio. También, administrará los programas de desvío donde las personas podrán cumplir parte de su sentencia fuera de la institución correccional. [4] En cuanto los requisitos de elegibilidad, el Artículo 16 del Plan de Reorganización del DCR determina que:

> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:
>
> (a) toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
>
> 1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;
> 2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias

---

[3] Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I.
[4] Véase, 3 LPRA, Ap. XVIII, Art. 16.

Controladas de Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley;

3) violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la "Ley de Explosivos de Puerto Rico";

4) toda persona convicta por delito grave de primer grado.

(b) toda persona convicta por la comisión de cualquier delito grave que no sea de los incluidos en el inciso (a) de este Artículo, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;

(c) **toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004;** y

(d) toda persona convicta mientras no haya satisfecho la pena especial dispuesta en el Código Penal de Puerto Rico, a menos que posea un plan de pago a plazos sujeto a las disposiciones de la "Ley para la Imposición de la Pena Especial del Código Penal de Puerto Rico".

(e) toda persona convicta por los incisos (b) o (c) del Artículo 4.02 o por los incisos (B) o (C) del Artículo 5.07 de la Ley 22-2000, según enmendada, conocida como "Ley de Vehículos y Tránsito de Puerto Rico".

Del mismo modo, y a tenor con las facultades concedidas al DCR por el Plan de Reorganización, dicha agencia aprobó el *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 de 9 de agosto de 2023 (Reglamento 9488). Este, en su Artículo VIII, establece que no será elegible para participar en los programas de desvío, entre otros, "toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004".

**-III-**

En el caso ante nos, el Sr. Torres Santiago aduce que erró el DCR al denegar su solicitud para el Programa de Pase Extendido con Monitoreo Electrónico. Específicamente, argumenta que la Exposición de Motivos de la Ley Núm. 79-2022, la que enmendó el inciso (a) del Artículo 16 del Plan de Reorganización del DCR, dispone lo siguiente: "[n]o se justifica que, en

ciertos delitos graves, luego que el confinado haya completado una parte sustancial de su sentencia y exhibiera buena conducta, por lo que la pena carcelaria haya sido efectiva, que se le niegue la oportunidad de brindarle un programa de propenda a su total rehabilitación y lo prepara para la libre comunidad." Asimismo, señala que el mencionado estatuto nada dispone sobre aquellas personas convictas de delito grave con determinación de reincidencia agravada según dispuesto por el Código Penal de 2012. Así pues, el recurrente sostiene que en vista de que los requisitos de elegibilidad hacen mención del Código Penal de 2004, no se debe considerar como excluido a tenor de la normativa vigente.

Sobre su reclamo, primeramente, el DCR argumenta que el recurrente intenta obtener la revisión de dos dictámenes administrativos diferentes, lo que contraviene lo resuelto por el Tribunal Supremo de Puerto Rico en *M-Care Compounding Pharm. v. Dpto. de Salud*, 186 DPR 159, 182 (2012).[5] De otra parte, y en cuanto a la decisión recurrida, admite que tanto el Artículo 16(c) del Plan de Reorganización del DCR, así como el Reglamento 9488 en su Artículo VIII(3) contemplan que se deniegue el privilegio de desvío a quien haya sido declarado incurso en reincidencia agravada conforme a lo dispuesto en el Código Penal de 2004.

Ahora bien, expone que lo anterior sólo implica que la aludida determinación judicial se ajuste a la descripción consignada sobre reincidencia agravada del Código Penal de 2004 y no que únicamente se excluirá del privilegio de desvíos a los sentenciados por infracciones graves bajo este. Así señala que al momento de los hechos por los que el recurrente

---

[5] Luego de una lectura del escrito sometido por el recurrente, particularmente de la sección en la que identifica la resolución cuya revisión se solicita no nos parece que esa sea su intención. Allí, el Sr. Torres Santiago identifica la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Pase Extendido con Monitoreo Electrónico* como la determinación de la que recurre. En cuanto a la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa de Pase Extendido con Monitoreo Electrónico y Programas Religiosos y Seculares,* solamente informó que, ante una tardanza de más de 9 meses del referido para evaluación sin obtener respuesta, el día 24 de marzo de 2026, remitió por correo regular un recurso de revisión judicial ante este Tribunal de Apelaciones.

cumple pena de reclusión el Código Penal de 2004 ya no estaba en vigor, más la definición de reincidencia agravada pasó inalterada de dicho código al Código Penal de 2012, vigente en ese momento. Basándose en este argumento, plantea que el foro que sentenció al Sr. Torres Santiago lo declaró incurso en reincidencia agravada según lo dispuestos en el Código Penal de 2004, lo que fundamenta que el DCR lo declarara inelegible a los pases extendidos con monitoreo electrónico en virtud del Artículo 16(c) del Plan de Reorganización.

A su vez, el DCR establece que la porción de la Exposición de Motivos de la Ley 79-2022 citada por el recurrente no precisa si los delitos graves por lo que el recurrente cumple sentencia, entiéndase aquellos delitos graves en los que se determinó reincidencia agravada, están contemplados entre aquellos delitos graves considerados para flexibilizas la aludida norma de exclusión. Por ello, expone que la intención legislativa de excluir a los convictos por delito grave con reincidencia agravada del privilegio de desvío resulta clara e indudable.

A los fines de considerar los argumentos presentados por el recurrente para impugnar la determinación recurrida, así como aquellos planteados por el DCR en su defensa, hemos comparado las disposiciones referentes a la reincidencia agravada contempladas en el Código Penal de 2004 con aquellas incluidas en el Código Penal de 2012. Al así hacer, encontramos que la intención del legislador en cuanto a qué constituiría reincidencia agravada fue la misma.

Sobre la reincidencia agravada, el Código Penal de 2004 dispone que:

(b) Habrá reincidencia agravada cuando el que ha sido convicto y sentenciado anteriormente por dos o más delitos graves, cometidos y juzgados en tiempos diversos e independientes unos de otros, incurre nuevamente en otro delito grave. La pena a aplicar podrá aumentarse hasta un veinte (20) por ciento del límite máximo del intervalo de pena para el delito.[6]

---

[6] 33 LPRA sec. 4709 *ante.*

Del mismo modo, y en cuanto a lo mismo, el Código Penal de 2012 establece que:

> (b) Habrá reincidencia agravada cuando el que ha sido convicto y sentenciado anteriormente por dos o más delitos graves, cometidos y juzgados en tiempos diversos e independientes unos de otros, incurre nuevamente en otro delito grave. En este tipo de reincidencia se podrá aumentar en cincuenta (50) por ciento la pena fija dispuesta por ley para el delito cometido".[7]

Como puede apreciarse, ambos códigos penales determinan la existencia de una reincidencia grave cuando la persona ha sido convicta y sentenciada anteriormente por dos o más delitos graves, cometidos y juzgados en tiempos diversos e independientes unos de otros. Nótese que, el único cambio que sufrió el texto es a fines de aumentar de porcentaje de la pena dispuesta por ley para el delito cometido.

De la misma forma, hemos repasado el texto de la Ley 79-2022. Como resultado de nuestro estudio, coincidimos con el DCR en cuanto a que el lenguaje en la Exposición de Motivos del mencionado estatuto no permite precisar que fuera la intención legislativa el que los delitos graves con determinación de reincidencia agravada mencionados en el inciso (c) del Artículo 16 del Plan de Reorganización- las que destacamos no fueron objeto de la enmienda- se beneficiaran de la flexibilidad reconocida en las exclusiones que sí fueron enmendadas. La Ley 79-2022 es evidente en cuanto a que la intención legislativa era que el único inciso objeto de enmienda con el fin de flexibilizar las exclusiones a programas de desvío era el inciso (a) del Artículo 16 del Plan de Reorganización. Así claramente lo enuncia al comienzo. Al final de cuentas, sabido es que cuando el lenguaje de una ley es claro e inequívoco, el propio texto del estatuto es la expresión por excelencia de la intención legislativa.[8]

La inalterada mención del Código Penal de 2004 en el inciso (c) del Artículo 16 del Plan de Reorganización pudiera llevar a la conclusión de

---

[7] 33 LPRA sec. 5106 (b).
[8] *Class Fernández v. Metro Health Care Management System, Inc.*, 214 DPR 348, 365 (2024).

que así es. Sin embargo, la similitud arriba destacada en cuanto a qué constituía reincidencia agravada bajo el anterior código penal y el código hoy vigente, nos mueve a concluir que su permanencia se debió a razones ajenas a la intención legislativa de permitir que aquellas personas que han sido convictas por un delito grave y contra las que se ha hecho una determinación de reincidencia agravada se beneficien de los programas de desvío.

Ante ello, concluimos que la decisión recurrida descansó en una interpretación y aplicación adecuada de las disposiciones legales aplicables. De igual manera, la actuación del DCR no es irrazonable, arbitraria ni ilegal, por lo que resolvemos sostenerla.

**-IV-**

Por los fundamentos antes esbozados, se confirma la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones